Filed 5/27/26  P. v. Rocha CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RANDY JOE ROCHA,<br><br>Defendant and Appellant. | F089295<br><br>(Super. Ct. No. SC045227A)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Andrew B. Kendall, Judge.

Nancy Gaynor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In 1991, petitioner Randy Joe Rocha pled guilty to second degree murder. He subsequently filed four petitions for resentencing under Penal Code section 1172.6[1] (former § 1170.95).[2] The first was denied on February 27, 2020, and the second was denied on November 4, 2021. The third and fourth petitions, which are at issue in this appeal, were considered together and denied based on the doctrine of issue preclusion.

On appeal, Rocha argues that his third and fourth petitions are not procedurally barred because the threshold requirements for issue preclusion were not met, and even if they had been, there were relevant and significant changes in the law after they were denied. On the merits, he argues that he made a prima facie showing for relief and nothing in the record of conviction establishes his ineligibility. The People disagree. We reverse and remand with directions to the trial court to conduct an evidentiary hearing pursuant to section 1172.6, subdivision (d).

## PROCEDURAL HISTORY AND BACKGROUND

### I.    Plea Agreement and Sentence

In 1991, the Kern County District Attorney filed a complaint charging Rocha and Renae Rocha[3] with first degree murder. Rocha waived his right to a preliminary hearing and pled no contest to second degree murder. The parties stipulated that there was a factual basis for the plea, but the stipulation did include any specific facts, nor did it refer to any documents that contained any relevant facts.

Rocha subsequently filed a motion to withdraw from this plea agreement. His motion was denied and he was sentenced to a term of 15 years to life. He appealed, and

---

[1] Undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

[3] Subsequent references to Renae Rocha will be by her first name only to avoid confusion. We intend no disrespect.

our court affirmed the judgment.  (*People v. Rocha* (Oct. 29, 1992, F016154) [nonpub. opn.] (*Rocha I*).)[4]

## II.  Factual Summary from *Rocha I*

In Rocha's direct appeal, *Rocha I*, *supra*, F016154, our court summarized the facts related to the charge.  We provide that factual summary here.

"While incarcerated in Iowa for assault charges arising from a 'domestic violence situation' in which he allegedly assaulted his wife, Renae …, [Rocha] contacted Iowa law enforcement officials concerning a murder which he claimed he and Renae committed in 1982 while camping in Chowchilla, California.  [Rocha] told the deputies he was admitting to the homicide in order to get even with Renae for her refusal to allow him to see his daughter.  He told them 'they met a man in the Chowchilla area, known to them as "Jim."  They murdered "Jim," took his vehicle, and then transported … the body to Kern County and disposed of it outside of the Bakersfield City limits.'

"The resulting investigation revealed that James Dunlap, Jr. (Jim), had indeed met with a violent death in the summer of 1982 and that a 'scroungy' looking couple matching the description of [Rocha] and Renae had been seen with him in the weeks prior to the murder.

"Upon questioning by investigators, Renae confirmed that [Rocha] had killed Jim, whom she described as 'just an old alcoholic.'  She stated that after arriving in the Chowchilla area, they met Jim with whom she engaged in prostitution for a two-week period.  Jim wanted to make an arrangement with her wherein he would take her to the Bakersfield area and 'set her up' in prostitution.  Renae said [Rocha] 'was upset that Jim would possibly cut him out of the relationship, as Jim's plans did not include [Rocha] going with them to Bakersfield.'  On the night of the murder, she stayed at the campsite while [Rocha], Jim and a third individual went into town to drink.  Renae told the investigators the following events occurred upon [Rocha's] return:

" '[Rocha] woke her up and as they were sitting at the campfire talking, [Rocha] got up and left the area, going into the nearby wooded area as he was nauseous.  He did this on

---

[4] On February 18, 2026, we granted the People's request for judicial notice of appellate records from this case that were filed along with that request.

3.

approximately three occasions and, the last time, when he returned to her and Jim, he was holding a … "big branch." She observed [Rocha] holding this with both hands, and as he walked behind Jim, who was seated facing her, [Rocha] raised the branch above his head. When she realized [Rocha] was going to hit Jim, she told him to stop; however, [Rocha] struck Jim, who then fell to the ground. She became scared and ran into the woods, with [Rocha] chasing her and yelling at her, "I did it for you." [Rocha] claimed that he loved her and that he did not want Jim to come between them. She stated that [Rocha] was excited and told her he also wanted her to be a part of it and forced her to return to the campfire where he took a piece of wood and put it across Jim's neck. [Rocha] stood on the wood by placing it on each side of Jim's neck and standing there for a long period of time. [Rocha] … had her stand on the victim's chest and stomach.

" '[Rocha] subsequently wrapped the body in a blanket and … placed [it] in the cab of the truck with her and [Rocha]. After driving for some time, the body was left alongside the road somewhere in Kern County.' " (*Rocha I*, *supra*, F016154, fn. omitted.)

### III.   Section 1172.6 Petitions

On February 15, 2019, Rocha filed a petition for resentencing under section 1172.6, alleging he could not presently be convicted of murder because of the changes to sections 188 and 189. Counsel was appointed. The prosecutor filed an opposition. The prosecutor argued that the court could consider the facts as summarized in *Rocha I*, *supra*, F016154 to determine whether Rocha was entitled to relief. The prosecutor further argued that, based on these facts, Rocha was not entitled to relief. Defense counsel filed a reply, but she submitted on the prosecutor's statement of facts and provided no argument as to why Rocha was entitled to relief. On February 27, 2020, the trial court summarily denied the petition via minute order.

On July 30, 2020, defense counsel filed a notice of appeal. On February 17, 2021, our court dismissed the appeal as untimely after Rocha failed to set forth a jurisdictional basis for the appeal. (*People v. Rocha* (Feb. 17, 2021, F081516) app. dism.)[5]

On October 29, 2021, Rocha filed a second petition for resentencing. The trial court denied this petition on November 4, 2021. There is nothing in the record indicating the court appointed counsel for Rocha or that the parties were given an opportunity to file briefing.[6] Rocha did not appeal.

On December 27, 2023, Rocha filed a third petition,[7] and on January 29, 2024, he filed a fourth petition.[8] Counsel was appointed, and the trial court considered these petitions together. The prosecutor filed an opposition, arguing that Rocha was not entitled to relief because: his plea of guilty to first degree murder showed he was the actual killer; the matter was previously decided and the doctrine of res judicata applied; and even if he was not the actual killer, he was a major participant who acted with reckless disregard for human life and aided and abetted with the intent to kill. Defense counsel filed a reply, arguing that: nothing in the record of conviction refuted the allegation in his petition that he was entitled to relief under section 1172.6; and his petition was not successive or barred by the doctrine of res judicata because there were significant changes in the law after his first two petitions were denied.

On January 31, 2025, the trial court held a hearing on the third and fourth petitions. The court denied the petitions, ruling as follows:

---

[5] On September 16, 2025, we granted petitioner's request for judicial notice of the appellate record in this case.

[6] The record on appeal does not include a copy of the second petition for resentencing or the order denying it.

[7] The record on appeal does not include a copy of this petition.

[8] At the hearing on the third and fourth petitions, petitioner informed the trial court that he filed the fourth petition because he thought he did not sign the third petition.

"The first [p]etition was denied on February 27th, 2020, and the appeal was dismissed February 17th, 2021. The denial was on the merits of the matter…. In a July 26th, 2021 California Supreme Court opinion in … *People v. [Lewis]* 11 Cal.5th 952, the rules [*sic*] affirm that a trial court cannot weigh the evidence at the prima facie stage. So … the second 1172.6 [p]etition was denied on November 4th, 2021. [Rocha] did not appeal that ruling. The California Rules of Court[, rule] 8.308 (a) provides that a Notice of Appeal must be filed within 60 days of the judgment. Therefore the conviction or ruling in this case becomes final 60 days if not appealed. Therefore the order rendered on November 4th, 2021, denying the second 1172.6 [p]etition was final as of January 3rd, 2022. Effective January 1st, 2022, there were new procedural rules [e]nacted; however, there was no assertion about anything related to those rules. So the question is there are four basic threshold requirements for a finding about issue preclusion. 1, is it the identical issue? Yes. The issue[s] raised in the third and fourth Petition are identical to the issues raised in the first and second [p]etition, which were already denied on the merits. 2, were they decided on the merits? Yes. In the first [p]etition the issue of constitutionality was withdrawn. It was a decision on the merits. The second time that it was filed and denied on November 4th, 2021, the [c]ourt made a clear ruling on the merits that there was no prima facie case. It was decided on the merits. 3, was the decision necessarily decided on the merits? Again, yes. The [c]ourt had no choice but to make a prima facie ruling. That's what it was requested to do. 4, is the decision final? Yes. The decision in those cases are final. Now the [c]ourt is aware that the United States Supreme Court has stated a rule of collateral estoppel or issue preclusion in criminal cases is not to be to applied in a hyper technical archaic approach like a 19th Century Pleading book, but with realism and rationality. *Ashe v. Swenson* [(]1970[)] 397 U.S. 436 at [p.] 444. So the [c]ourt is aware that the [c]ourt has to also consider the public policy in this case as to whether public policy also favors upholding a finding of issue preclusion. However, this case the 1172.6 [p]etition that have been raised in the third and fourth time [*sic*], they are not based on any new law or any new facts that have arisen [since] the determination of the original appeal from November 4th, 2021, when the matter was not appealed. Nothing knew [*sic*] has arisen. There [are] no new laws and no knew [*sic*] facts. And the general public policy favors the finality of judgment. So given that there is nothing new ra[i]sed in these [p]etition[s] and keeping in mind the public policy that favors a finality in judgments, the [c]ourt finds that public policy also supports the finding of issue preclusion. So therefore the [c]ourt does find that the third 1172.6 [p]etition filed December 27th, 2023[,] and the fourth [p]etition filed on January 29th, 2024[,] are barred by issue preclusion as these were already litigated by the [c]ourt and already

6.

denied. The [c]ourt then denies the [p]etitions and dismisses both [p]etitions."

## IV. Current Appeal

On January 31, 2025, Rocha timely filed a notice of appeal. On appeal, he argues that his third and fourth petitions are not procedurally barred because the threshold requirements for issue preclusion were not met, and even if they had been, there were relevant and significant changes in the law after the petitions were denied. On the merits, he argues that he made a prima facie showing for relief and nothing in the record of conviction establishes his ineligibility.

## DISCUSSION

## I. Section 1172.6

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) First, the bill "narrowed the scope of the felony-murder rule so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.' " (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468, quoting § 189, subd. (e)(1)–(3).) Second, the bill "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).) Now, " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Ibid.*)

7.

Additionally, Senate Bill No. 1437 added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense " 'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel*, *supra*, 15 Cal.5th at p. 449.)  Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)  If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction.  (§ 1172.6, subds. (c), (d)(1).)

## II. Rocha's Third and Fourth Petitions are Not Barred by the Doctrine of Issue Preclusion

### A. *Applicable Law*

"In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel." (*Strong*, *supra*, 13 Cal.5th at p. 715.)  This doctrine "bars relitigation of issues earlier decided 'only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' " (*Id.* at p. 716.)  " 'The party asserting collateral estoppel bears the burden of establishing these requirements.' " (*Curiel*, *supra*, 15 Cal.5th 433, 452.)

However, " '[e]ven if the[ ] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles'

of promoting efficiency while ensuring fairness to the parties." (*Strong, supra,* 13 Cal.5th at p. 716.) " '[O]ne well-settled equitable exception to the general rule' of issue preclusion … 'holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue.' [Citation.] 'This exception ensures basic fairness by allowing for relitigation where "the change in the law [is] such that preclusion would result in a manifestly inequitable administration of the laws." [Citation.] It also reflects a recognition that in the face of this sort of legal change, the equitable policies that underlie the doctrine of issue preclusion—"preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation" [citation]—are at an ebb.' " (*Curiel, supra,* 15 Cal.5th at p. 454.)

### B. Standard of Review

We independently review a trial court's issue preclusion ruling. (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238–1239 (*Beaudreaux*).)

### C. Analysis

Rocha argues that issue preclusion does not apply because the threshold requirements for issue preclusion were not met, and even if they were, there were relevant and significant changes in the law after the petitions were denied.

The People agree that the law has changed since Rocha's first two petitions were denied. However, the People argue that the exception to the rule of issue preclusion does not apply here because "none of those changes affects the trial court's denial of appellant's petitions for resentencing because he was and is ineligible as a matter of law."[9]

---

[9] The People do not address the threshold requirements for issue preclusion to apply.

Even assuming that the threshold requirements of issue preclusion were met here, we agree with Rocha that issue preclusion should not have been applied because there was a significant change in the law after his first two petitions were denied that warrants reexamination of the issue.

The first petition was denied in 2020. While the trial court did not explain the basis for the denial, the only document submitted to the court was a copy of our court's decision in *Rocha I*, and the prosecutor's argument was that, based on the facts as summarized in *Rocha I*, Rocha was not entitled to relief

. Given this, and that defense counsel submitted on those facts, it appears that the trial court relied on those facts when denying the petition.

The second petition was denied on November 4, 2021. The trial court did not explain the basis for its ruling, and the parties were not provided with an opportunity to file briefs. Importantly, however, in July of 2021, our Supreme Court decided *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). In this case, our Supreme Court confirmed that "[a]ppellate opinions … are generally considered to be part of the record of conviction" and could thus be considered at the prima facie stage. (*Id.* at p. 972.) Given this ruling, that no additional evidence was submitted, and that no additional arguments were made, it appears that if this ruling was on the merits, it was also based on the facts as summarized in *Rocha I*.

In 2022, the law changed. As relevant here, "[s]ection 1172.6 was amended, effective January 1, 2022, so as to add the following italicized language: 'At the hearing to determine whether the [defendant] is entitled to relief, ... [*t*]*he court may ... consider the procedural history of the case recited in any prior appellate opinion*.' (Former § 1170.95; subd. (d)(3), Stats. 2021, ch. 551, § 2, italics added.)" (*People v. Bratton* (2023) 95 Cal.App.5th 1100, 1113.) Subsequently, multiple Courts of Appeal interpreted this provision to prohibit a trial court from considering the factual summary in a prior appellate opinion, even at the prima facie stage. (See, e.g., *id.* at pp. 1113–1114;

10.

*Beaudreaux*, *supra,* 100 Cal.App.5th at p. 1238; *People v. Lee* (2023) 95 Cal.App.5th 1164, 1183.)

This is a significant and relevant change in the law. As discussed above, the trial court appears to have based its denial of petitioner's first two petitions on the facts as summarized in our prior opinion. This is now prohibited. Moreover, as analyzed below, the record of conviction, excluding the prior appellate opinion, does not conclusively establish that Rocha is ineligible for relief. Accordingly, issue preclusion does not apply.

## III.    Rocha Has Made a Prima Facie Showing

### A.      Applicable Law

"The record of conviction will necessarily inform the trial court's prima facie inquiry …, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry … is limited." (*Ibid.*) At this stage, "a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense." (*Curiel*, *supra*, 15 Cal.5th at p. 463.) "[A] … court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972.)

### B.      Standard of Review

"We independently review [a] trial court's decision to deny a section 1172.6 petition for resentencing at the prima facie stage[.]" (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211.)

### C.      Analysis

Rocha argues that he made a prima facie showing for relief, and that nothing in the record of conviction establishes his ineligibility. Among other things, he relies on the

fact that the record shows there was a coperpetrator who may have been the actual killer; and that while defense counsel stipulated to a factual basis for the plea, he did not stipulate to any particular theory of murder.

The People disagree. According to the People, the record of conviction establishes Rocha's ineligibility for relief because it shows he was convicted as the actual killer. The People argue that, in *Rocha I*, our court found that Rocha was charged and convicted as the actual killer. The People also argue that the information in the probation report, which summarized police reports, establishes that he pled guilty as the actual killer. Finally, the People argue that he "was not charged with first degree murder under the natural and probable consequences doctrine, the felony-murder rule, or any other theory on which malice was imputed to him solely based on his participation in a crime."

We agree with Rocha. He has asserted that he is eligible for relief because of the changes made to sections 188 and 189, and the record of conviction shows that both he and another individual were charged with murdering Jim. This alone is ordinarily enough to establish a prima facie case. (See *People v. Mares* (2024) 99 Cal.App.5th 1158, 1173 ["If a defendant who faced a murder charge before Senate Bill [No.] 1437 pled guilty and the record contains any indication he had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition"]; *People v. Muhammad* (2024) 107 Cal.App.5th 268, 280 (*Muhammad*) [same].)

And while our Supreme Court recently addressed when conclusory allegations in a petition are sufficient to make a prima facie showing in *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*), *Patton* is inapposite. In *Patton*, the petitioner filed a petition asserting he was entitled to relief pursuant to section 1172.6, without including any facts in support of this assertion. (*Id.* at p. 559.) The trial court, relying on unrebutted facts in the preliminary hearing transcript, denied the petition because it showed the petitioner was "the sole and direct perpetrator of the shooting." (*Id.* at pp. 560, 563.) On appeal,

the petitioner did not argue that the facts in the preliminary hearing transcript failed to show he was the direct perpetrator. (*Id.* at pp. 564–565.) Instead, he "objected to the use of any facts within the preliminary hearing transcript to refute his conclusory allegations of entitlement to relief." (*Id.* at p. 564.) Our Supreme Court rejected the petitioner's argument, holding "that a petitioner who offers only conclusory allegations of entitlement to relief under section 1172.6, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Id.* at p. 557.)

Here, there is nothing in the record of conviction that demonstrates Rocha is ineligible for relief. Unlike *Patton*, there was no preliminary hearing in this case.[10] Additionally, the charging document did not specify any particular theory of first degree murder, nor did it need to. "Our Supreme Court has held that 'only a single statutory offense of murder exists.' [Citation.] '[I]t has long been the law in this state that an accusatory pleading charging murder need not specify … the manner in which the murder was committed.' [Citation.] Nor does an accusatory pleading need to 'specify the theory of murder on which the prosecution relies at trial.' [Citation.] 'Specifically, neither felony murder nor murder under the natural and probable consequences doctrine need be separately pleaded.' " (*People v. Estrada* (2024) 101 Cal.App.5th 328, 338 (*Estrada*); see also *Muhammad*, *supra*, 107 Cal.App.5th at p. 277.) Accordingly, the complaint allowed the prosecutor to proceed under now-invalid theories.

---

**10** While not binding, we note that *Patton* included the following footnote: "The People note, before us, that some cases may be so 'straightforward' as to prompt a concession of a prima facie showing. (See *People v. Porter* (2022) 73 Cal.App.5th 644, 652, 288 Cal.Rptr.3d 668 ['The People concede petitioner may be able to establish a prima facie showing'].) And in answering the amicus brief of the Office of the State Public Defender, the People agreed, ' "if the record contains any indication [the petitioner] had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition." ' " (*Patton*, *supra*, 17 Cal.5th at p. 560, fn. 4.)

13.

Further, Rocha's plea did not clarify the matter. He did not plead guilty to any specific theory of murder liability or admit to acting with an intent to kill. Instead, he pled guilty to second degree murder in generic terms. "Thus, the prosecution could have proceeded under any theory of liability…. [Citations.] As such, his generic plea does not make him ineligible for relief at the prima facie stage as a matter of law." (*Estrada*, *supra*, 101 Cal.App.5th at p. 338.)

According to the People, however, the probation report conclusively establishes that Rocha pled guilty as the actual killer. We disagree. First, it is not clear that the probation report can even be considered at this stage of the proceeding. The People have not cited a single case, nor are we aware of one, holding that a probation report is part of the record of conviction that can be considered at the prima facie stage. In fact, while in a different context, courts have held otherwise. (See, e.g., *People v. Burnes* (2015) 242 Cal.App.4th 1452, 1458 ["A probation report 'ordinarily is not part of the record of conviction.' "].) Moreover, the report was created after Rocha pled guilty. The People do not explain how a probation report that was created after a petitioner pled guilty, by itself, conclusively establishes the theory of murder to which a petitioner had pled.

Moreover, even assuming the probation report is part of the record of conviction and the facts contained in a probation report can conclusively establish that a petitioner is the actual killer, the report does not do so here. It does summarize police reports, which purportedly include a statement by Renae. According to her, Rocha was the actual killer, and she only stood on Jim's chest at Rocha's direction after he had already hit Jim with a "big branch" and had used a piece of wood to stand on his neck "for a long period of time." However, this is not the only information contained in the report. The report also states that Rocha told law enforcement that he and Renae murdered Jim and took Jim's vehicle. It also includes a statement from Rocha that Renae was the murderer, and she was "a compulsive liar." This is similar to a statement he made at the plea hearing, that

14.

Renae was "a liar and she gets away with it." Thus, the probation report does not conclusively establish that Rocha pled guilty as the actual killer.

As to the People's arguments regarding our prior decision in *Rocha I*, they are misplaced. In *Rocha I*, our court addressed whether the trial court erroneously denied Rocha's motion to withdraw his plea. (*Rocha I*, *supra*, F016154.) And the People are correct that, in our court's analysis of this issue, we stated that Rocha did not submit any evidence indicating he had a meritorious defense to the charge, such as actual innocence or self-defense. (*Id.*) We also stated that Rocha never indicated to defense counsel that he was actually innocent of the crime, and that he had repeatedly made incriminating statements. Finally, our court did find that there was a factual basis for his guilty plea, in part based on Renae's statement that he was the actual killer. (*Id.*) However, none of this is relevant to the issue at hand. In ruling on whether Rocha stated a prima facie case for relief, we are not called to determine whether he is actually innocent, whether he had viable defenses at the time of his plea, or whether there was a factual basis to support his plea. Instead, the question before us is whether, because of the changes to sections 188 and 189, he could not presently be convicted of murder. Obviously, our court could not have addressed this issue in *Rocha I*, nor did we determine whether the record of conviction conclusively established that he was prosecuted and convicted as the actual killer.

In sum, given that Renae was also charged with first degree murder and that the record of conviction suggests Rocha contested that he was the actual killer, the prosecutor may have been proceeding under now-invalid theories of murder. Thus, the record does not demonstrate that Rocha is ineligible for relief and he is entitled to an evidentiary hearing.

## DISPOSITION

The trial court's January 31, 2025, order denying Rocha's third and fourth petitions for resentencing under section 1172.6 is reversed. The matter is remanded with

15.

directions to the court to issue an order to show cause and conduct an evidentiary hearing pursuant to section 1172.6, subdivision (d).

SNAUFFER, J.

WE CONCUR:

LEVY, Acting P. J.

DE SANTOS, J.

16.